**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**DENICE RIGGINS, Administratrix of the Estate**                    **PLAINTIFF**
**of DAMION S. RIGGINS, Deceased and Estate of**
**Damion S. Riggins and Wrongful Death**
**Beneficiaries of Damion S. Riggins, Deceased**

**V.**                                                    **NO. 4:14-CV-110-DMB-JMV**

**CITY OF INDIANOLA, MISSISSIPPI, ET AL.**                    **DEFENDANTS**

## ORDER

Plaintiff Denice Riggins filed this wrongful death lawsuit on behalf of her deceased son,
Damion S. Riggins, for constitutional violations Damion allegedly suffered while detained at the
City of Indianola Jail. Before the Court is the summary judgment motion of Defendants City of
Indianola, Mississippi ("City"); Mayor Steve Rosenthal; Police Chief Robert O'Bannon; City
Clerk Jane Evans; and John Does 1–5. Doc. #36. For the reasons below, summary judgment
will be denied.

## I
## Summary Judgment Standard

"Summary judgment is appropriate when there are no genuine issues as to any material
facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp.
A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322–23 (1986)). To award summary judgment, "[a] court must be
satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words,
that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to
return a verdict in her favor." *Norwegian Bulk Transp. A/S,* 520 F.3d at 411–12 (internal

quotation marks omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (citation and internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II
## Relevant Facts

The circumstances giving rise to this tragic case began shortly before midnight on December 16, 2013. Sometime before 11:30 p.m., an unknown individual attempted to burglarize Spencer's Grocery, which is owned by Robert Kent. Doc. #36-1 at 1–2. Shortly after the attempted burglary, Kent flagged down Officer Marshall Hodge of the City of Indianola Police Department. *Id.* at 5.[1] Kent informed Officer Hodge that Damion Riggins, who was

---

[1] The document cited, Doc. #36-1, is the Indianola Police Department incident report. The parties heavily rely on hearsay statements, including statements in the incident report, in establishing the record. No party has objected to this form of evidence. Accordingly, the Court will consider the proffered evidence for the purpose of deciding the

walking nearby, matched the description of an individual who had recently attempted to burglarize his grocery store. *Id.* Officer Hodge located Riggins and initiated contact by "advis[ing Riggins] to come" and speak with him. *Id.* As Riggins approached Officer Hodge, he purportedly "began pouring out a bag of white powdery substance" and tossed the empty bag and other "contents of his pockets onto the ground." *Id.* During their conversation, Riggins informed Officer Hodge that "he had cocaine and that he poured it out when he saw [Officer Hodge]." *Id.* Among the items Riggins tossed to the ground, Officer Hodge located "a screwdriver, two lighters, and an empty bag that contained white powder on the edges." *Id.*

Roger Triplett, who was standing in the street with Kent when he flagged down Officer Hodge, witnessed the attempted burglary at Spencer's Grocery. *Id.* at 3, 5. Triplett "identified Riggins as the suspect who he just saw pry tin off the side of Spencer's store using the screw driver he threw on the ground." *Id.* at 5. Based on Triplett's identification, Riggins was arrested and charged with the attempted burglary of Spencer's Grocery.[2] *Id.* at 1, 5.

At the police department, Riggins exhibited "irate" behavior by "refus[ing] to go into the [jail] cell" and by "grab[bing] on to the bars and refus[ing] to let go."[3] *Id.* at 5. After Riggins repeatedly failed to follow Office Hodge's instructions, Officer Hodge, Investigator Jerry Pate, and Corporal Ozie Carter used force and handcuffs to subdue Riggins and secure him in his cell.[4] *Id*; Doc. #45-3 at 4. The officers placed Riggins in his cell with his wrists cuffed behind his

---

motion for summary judgment. *See BGHA, LLC v. City of Universal City, Tex.*, 340 F.3d 295, 299 (5th Cir. 2003) (in absence of hearsay objections, court did not err in considering hearsay affidavits for purpose of summary judgment).

[2] This was not Riggins' first encounter with the Indianola Police Department. Since at least 2005, Riggins had multiple interactions with City police officers, including arrests and a service call after Riggins attempted to commit suicide by hanging himself with an RCA jack cord. Doc. #45-2.

[3] The incident was captured on video. When Defendants filed the instant motion, Plaintiff had not yet had an opportunity to view the video. *See* Doc. #47 (video conventionally filed same day as Defendants' reply brief).

[4] Riggins' refusal to follow the officers' instruction resulted in an additional charge for failure to comply. Doc. #36-1 at 1.

3

back. Doc. #45-3 at 4. Corporal Carter removed Riggins' belt, while Officer Hodge removed Riggins' personal property, but neither officer removed Riggins' shoe laces. *Id*. at 6. At approximately 12:20 a.m.[5] on December 17, 2013, the officers left Riggins secured in his cell, where he continued "mule kicking the cell door" for an unspecified period of time. *Id*.

After securing Riggins in his cell, Corporal Carter returned to his patrolling duties, Investigator Pate interviewed several individuals who purportedly witnessed the attempted burglary of Spencer's Grocery, and Officer Hodge worked on his reports. *Id.* at 4, 6-7.

Sometime between 1:00 a.m. and 1:15 a.m., Officer Hodge and Investigator Pate noticed that Riggins "had stopped kicking the [cell] door." *Id*. at 7. This observation prompted Investigator Pate to go "check on Riggins." *Id*. As Investigator Pate approached Riggins' cell, he noticed that Riggins had his "back toward the cell door" and "a shoe lace around his neck." *Id*. at 4. Suspecting that Riggins was attempting to hang himself, Investigator Pate "yelled," asking Officer Hodge to bring a knife to cut Riggins down. *Id*. at 4, 7. As Officer Hodge rushed to Riggins' cell with the knife, he passed Investigator Pate who was "running to notify dispatch to call an ambulance and get a cell key." *Id*. at 4. Officer Hodge "immediately cut the string from the bars" and Investigator Pate cut the shoe lace from around Riggins' neck. *Id*. at 4, 7. The incident reports of Investigator Pate and Officer Hodge are silent regarding whether either of the officers attempted to administer CPR. *Id*. at 3–7. By the time an ambulance arrived several minutes later, Riggins was already deceased. *Id*. at 5, 7. Emergency Medical Services personnel pronounced Riggins dead at 1:20 a.m. on December 17, 2013. *Id*.

---

[5] Because both parties rely on the incident reports of the officers involved, certain facts, such as references to time, are imprecise. For example, Officer Hodge's incident report indicates that Officer Hodge, Investigator Pate and Corporal Carter secured Riggins in his cell at 12:20 a.m. Doc. #45-3 at 6. Investigator Pate's incident report, however, indicates that by 12:10 a.m., Riggins was already secured in his cell and Investigator Pate was interviewing a witness. *Id*. at 4.

The Mississippi State Medical Examiner's Office subsequently autopsied Riggins' body and opined that he "died as a result of hanging" and "[t]he manner of death is suicide." Doc. 36-4 at 3. Toxicology tests revealed the presence of "cocaine, ethanol, and marijuana" in Riggins' "postmortem blood sample." *Id.*

### III
### Procedural History

On July 3, 2014, Plaintiff filed a two-count complaint in the Circuit Court of Sunflower County. Doc. #2. As defendants, the complaint names the City of Indianola, Mississippi; Mayor Rosenthal, Police Chief O'Bannon, and City Clerk Evans, in their individual and official capacities; and John Does 1–5, in their individual and official capacities, for damages arising from Riggins' death. *Id.* In Count I of the complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the City for deliberate indifference to Riggins' serious medical needs and for "depriving him of his right to be free from punishment and to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution." *Id.* at 3–5. In Count II, Plaintiff asserts a state law claim for negligence against all defendants. *Id.* at 5–8.

On July 31, 2014, Defendants, asserting the existence of federal question jurisdiction, removed the state court action to this Court. Doc. #1. On February 6, 2015, Defendants filed a motion for summary judgment seeking dismissal of "all Defendants with prejudice."[6] Doc. #36 at 3. Three days later, based on their assertion of an immunity defense, Defendants moved to "stay all discovery not related to the immunity issue" pursuant to Local Uniform Civil Rule 16(b)(3)(A). Doc. #38 at 2. On February 17, 2015, United States Magistrate Judge Jane M. Virden granted the motion, staying "the attorney conference and disclosure requirements and all

---

[6] Defendants' motion for summary judgment does not expressly ask for the dismissal of all claims but such is logically inferred from their request that the Court "dismiss[] all Defendants with prejudice." Doc. #36 at 3.

discovery not related to the [immunity defense] pending the court's ruling on the motion, including any appeal." Doc. #39 (citing L.U. Civ. R. 16(b)(3)(B)). After seeking and receiving a short extension, Plaintiff responded to the motion for summary judgment on March 10, 2015.[7] Doc. #45. Defendants replied seven days later. Doc. #48.

## IV
## Analysis

Defendants have moved for summary judgment on three grounds: (1) "Plaintiff[] ha[s] failed to identify any deficiencies in departmental policy, any deficiencies in training, or a pattern or practice which could subject the [City] to liability in this case"; (2) Mayor Rosenthal, Police Chief O'Bannon, and City Clerk Evans "had no direct involvement in this detainee suicide claim and are entitled to qualified immunity"; and (3) under the Mississippi Tort Claims Act, Plaintiff's "claims are not cognizable." Doc. #36 at 1.

### A. Municipal Liability

Defendants argue that summary judgment is warranted on Plaintiff's § 1983 claim because Plaintiff failed to raise a custom or policy issue, failed to establish that any deficiencies in training proximately caused injury to Riggins, and failed to demonstrate the existence of a widespread pattern or practice at the Indianola Police Department that has resulted in a similar constitutional violation.[8] Doc. #37 at 4–10.

---

[7] Plaintiff originally filed the response on March 9, 2015. Doc. #44. The Clerk of the Court instructed Plaintiff to refile the response to amend the document title and to file the supporting memorandum as a separate docket entry.

[8] "To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009). "To serve as a basis for § 1983 liability, the failure to promulgate municipal policy must amount to 'an intentional choice, not merely an unintentionally negligent oversight.'" *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). "A failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Id.* (quoting *Rhyne*, 973 F.2d at 392). Similarly, while "alleg[ations] that [a municipality's] failure to provide training to municipal employees resulted in [a] constitutional deprivation ... are cognizable under § 1983, they can only yield liability against a municipality where [its] failure to train reflects

In response, Plaintiff argues that "Defendants' motion for summary judgment is premature" because "Plaintiff[] must take the depositions of certain officers of the Indianola Police Department in efforts to develop Plaintiff['s] theory as to customs and practices of the Indianola Police Department, given the fact there were no written policies and procedures."[9] Doc. #45 at 2. Counsel for Plaintiff also submitted an affidavit attesting that Defendants' motion for summary judgment was filed some fifty days before the close of discovery; Defendants "obstinately refused to produce the video tape of the hanging" prior to filing the instant motion; and Plaintiff had not yet had an opportunity to depose the involved officers.[10] Doc. #45-1 at 3. Based on these facts, Plaintiff requests that the "Court deny Defendant's Motion for Summary Judgment consistent with Rule 56(d)."[11] Doc. #45 at 4.

Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

---

deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

[9] While Plaintiff's filings are specific regarding the need for additional discovery which might aid the Court in determining the § 1983 claim, no such specificity exists regarding Defendants' qualified immunity and MTCA arguments.

[10] A notice to take the depositions of Ozzie Carter, Jerry Pate, and Kedrick Wash was filed on April 7, 2015, by Plaintiff. Doc. #50. The docket in this case does not indicate whether these depositions actually took place. *See* L.U. Civ. R. 5(d)(2) ("Immediately upon receipt of the original deposition, the party serving as custodian must file a copy of the cover sheet of the deposition and a notice that all parties of record have been notified of its receipt by the custodian [Official Form No. 2(a)]." As of this filing, however, Plaintiff has not requested to supplement her response to the motion for summary judgment with any facts that may have been obtained during any depositions.

[11] Pursuant to Local Rule 7(3)(C), "[a] response to a motion may not include a counter-motion in the same document." L.U. Civ. R. 7(3)(C). Plaintiff's request for relief under Rule 56(d), which is contained in her response to the motion for summary judgment, does not comply with the Court's Local Rules. Notwithstanding this deficiency, "[w]hen a party files a brief opposing the motion for summary judgment and informs the court of the need for additional discovery, these documents can combine to serve 'as the functional equivalent' of a Rule 56([d]) motion." *Travelers Prop. Cas. Co. of Am. v. Dillard's Inc.*, No. 2:07-CV-312-KS-MTP, 2008 WL 886099, at *2 (S.D. Miss. Mar. 28, 2008) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)).

Fed. R. Civ. P. 56(d). Rule 56(d) "allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (citation omitted). Rule 56(d) "motions are broadly favored and should be liberally granted." *Id.* If a party feels that more discovery is necessary to demonstrate a genuine issue of material fact, then they should file a Rule 56(d) affidavit stating they could not properly oppose the motion for summary judgment without a chance to conduct discovery. *See* Fed. R. Civ. P. 56(d). In numerous cases, federal courts have held that summary judgment was premature even when the opposing party failed to file a Rule 56(d) affidavit. *See, e.g., Investors Title Ins. Co. v. Bair*, 232 F.R.D. 254, 256 (D.S.C. 2005) (collecting cases involving former Fed. R. Civ. P. 56(f)); *see also Sapp v. Mem'l Hermann Healthcare Sys.*, 406 Fed. App'x 866, 869 (5th Cir. 2010) ("Rule 56(f) has been recodified 'without substantial change' as Rule 56(d).").

Considering the argument contained in Plaintiff's filings and the Fifth Circuit's admonition that the "[a]nalysis of … 'deliberate indifference' [is a] fact-intensive inquir[y] not easily determined without discovery," the Court is of the opinion that the Rule 56(d) standard is satisfied here. *Garrett v. Thaler*, 560 Fed. App'x 375, 380 n.3 (5th Cir. 2014) (citing *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)). Accordingly, at this time, summary judgment on Plaintiff's § 1983 claim will be denied.

**B. Individual Defendants and Qualified Immunity**

Defendants Mayor Rosenthal, Police Chief O'Bannon, and City Clerk Evans have moved for summary judgment based on qualified immunity. Doc. #37 at 3–4. Because Plaintiff has not asserted a constitutional claim against these defendants, however, the qualified immunity doctrine is inapplicable in this case.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity, to the extent it is asserted in connection with § 1983 actions, is available only to public officials who have allegedly violated an individual's federal statutory or constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995). "Because 'a violation of state law is not cognizable under § 1983,' *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985), the federal law doctrine of qualified immunity does not apply to state law claims." *Mawhirt v. Ahmed*, 8 Fed. App'x 125, 127 (2d Cir. 2001).

Count I of the Complaint, which specifically identifies a constitutional claim under 42 U.S.C. § 1983, names "Defendant, City of Indianola, Mississippi" as the defendant of the claim. Doc. #2 at 3–5. Count II names "Defendant Chief and Police Officers," "Defendant Dispatcher John Doe," "Defendants," and "Defendant, City of Indianola" as defendants of this separate claim.[12] *Id*. at 5–8. Unlike Count I, Count II does not reference § 1983 nor does it mention a constitutional right or any federal statute. *Id*. Instead, Count II is couched in the language of a negligence claim, repeatedly alleging that Defendants were "negligent and derelict" in carrying out certain duties. *Id*. at 5–8 (arguing duty, breach, causation, and injury); *see Gulledge v. Shaw*, 880 So. 2d 288, 292–93 (Miss. 2004) ("Under the negligence regime of tort law, a plaintiff must prove by a preponderance of the evidence (1) duty, (2) breach, (3) causation, and (4) injury."). The Court therefore interprets Count II as a negligence claim brought under state law. *See, e.g., Bornstein v. Cty. of Monmouth*, No. CIV. 11-5336, 2015 WL 2125701, at *5 n.7 (D.N.J. May 6,

---

[12] Because Count II does not reference Mayor Rosenthal or City Clerk Evans, it is unclear whether Plaintiff has actually alleged a claim against these defendants.

2015) ("While there is a single reference in the AC to CCS 'carelessly and recklessly fail[ing] to provide reasonable and proper medical care' and some mention of a delay in care, such stray remarks are insufficient to provide the requisite notice for a § 1983 claim under the familiar *Iqbal/Twombly* pleading standards, especially where Plaintiff has articulated no specific supporting facts in the AC and where the AC predominantly uses the language of negligence and a failure to use 'reasonable and proper skill' in its allegations against CCS."); *Tillman v. Ward*, No. CA 4:09-1188PMDTER, 2009 WL 2777696, at *1 (D.S.C. Aug. 31, 2009) (interpreting "Plaintiff's Complaint, which states he 'was injured at the negligence of the officer,' to assert a negligence cause of action").

Plaintiff's response to Defendants' inapplicable qualified immunity defense attempts to broaden the scope of the negligence claim raised in Count II. In the qualified immunity context, a plaintiff shoulders the burden of demonstrating that it "has alleged a violation of a clearly established constitutional right." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). To meet this burden, Plaintiff argues that the clearly established constitutional right identified in Count I (deliberate indifference to serious medical needs) also applies to the claim alleged in Count II. *See* Doc. #46 at 7–8 ("The question of whether Plaintiff[] allege[s] a violation of a clearly established right under current law is answered in the affirmative … in item #11" of Plaintiff's complaint (citing Doc. #2 at 4, ¶ 11)). In other words, Plaintiff's response attempts to add a new constitutional claim against Mayor Rosenthal, Police Chief O'Bannon, and City Clerk Evans.

"A party may not automatically raise a claim at summary judgment that he did not plead." *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 456 (S.D.N.Y. 2010). Moreover, "[a] Complaint cannot be modified by a party's affidavit or by papers filed in response to a

dispositive motion to dismiss or for summary judgment." *Streit v. Bushnell*, 424 F. Supp. 2d

633, 639 n.3 (S.D.N.Y. 2006). As explained above, Count II references neither § 1983 nor a

constitutional right; consequently, the Court declines to construe Count II as a constitutional

argument.[13] *See Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir.

2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a

motion for summary judgment is not properly before the court.") (citation omitted); *The Redland

Co. v. United States*, 97 Fed. Cl. 736, 756 (2011) (declining to consider new claim first raised in

motion for summary judgment and not contained in complaint); *Davis v. Coca–Cola Bottling Co.

Consol.*, 516 F.3d 955, 974–75 (11th Cir. 2008) (affirming refusal of district court to consider

eighteen claims not alleged in complaint but argued only in opposition to the motion for

summary judgment).

Because Plaintiff has alleged only a negligence claim against Mayor Rosenthal, Police

Chief O'Bannon, and City Clerk Evans, these defendants are not entitled to summary judgment

based on qualified immunity.[14] *See Mawhirt*, 8 Fed. App'x at 127 ("the federal law doctrine of

---

[13] This conclusion is bolstered by the expiration of the pleading amendment deadline, which occurred over a month before Defendants moved for summary judgment. *See* Doc. #14 at 4 (Case Management Order setting joinder and pleading amendment deadline for December 30, 2014).

[14] If the negligence claim was read as a deliberate indifference claim, Plaintiff likely could not overcome a qualified immunity defense. "[T]o defeat qualified immunity, the plaintiff[] must establish that the officers in this case were aware of a substantial and significant risk that [Riggins] might kill [him]self, but effectively disregarded it." *Jacobs*, 228 F.3d at 395. Plaintiff has not offered any factual allegations or argument that even suggests that Mayor Rosenthal, Police Chief O'Bannon, or City Clerk Evans were aware that Riggins might commit suicide. *See* Doc. #46 at 7–12. While Plaintiff has submitted a police incident report detailing Riggins' attempted suicide in 2005, she has not linked that past incident with Mayor Rosenthal, Police Chief O'Bannon, or City Clerk Evans. Doc. #45-2 at 5–6. In contrast, Mayor Rosenthal, Police Chief O'Bannon, and City Clerk Evans have each submitted an affidavit indicating, in relevant part, that they "had no role in the apprehension, arrest, charging, or booking of Damion Riggins" and that they were "not notified by any individual at any time … that Riggins had any type of suicidal tendency." Doc. #36-5 at ¶¶ VII, X; Doc. #36-6 at ¶¶ V, IX; Doc. #36-7 at ¶¶ VIII, IX. Moreover, Plaintiff explicitly pleaded that Defendants were merely "negligent and derelict" in carrying out their duties. Doc. #46 at 5–8. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999); *see also Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (citations omitted) (explaining there must be proof of culpability "beyond mere negligence or even gross negligence.").

qualified immunity does not apply to state law claims"); *Blackmon v. Carroll Cty. Sheriff's Dep't*, No. CIV.A. 3:05-CV-91LN, 2006 WL 286783, at *4 (S.D. Miss. Feb. 3, 2006) ("the doctrine of qualified immunity is not applicable to plaintiffs' state law claims").

### C. Mississippi Tort Claims Act

The Mississippi Tort Claims Act ("MTCA") permits lawsuits to be brought against employees of the state or any of its political subdivisions, including cities, based on "claims for money damages arising out of the torts of such governmental entities and the torts of their employees." Miss. Code Ann. § 11-46-5(1); *see City of Jackson v. Powell*, 917 So. 2d 59, 69 (Miss. 2005 ("[i]mmunity under the MTCA protects the city from lawsuits"). However, the MTCA also exempts governmental entities and their employees "acting within the course and scope of their employment or duties" from liability for certain kinds of claims. *Id.* § 11-46-9(1). Defendants list six exemptions that purportedly shield them from liability. *See* Doc. #37 at 10 (citing Miss. Code Ann. § 11-46-9(1)(c)–(f), (h), (m)). Defendants' motion does not, however, provide any argument applying the relevant facts to the six proffered exemptions.[15] Doc. #37 at 10–11. Notwithstanding this deficiency, Plaintiff's response specifically challenges the applicability of the § 11-46-9(1)(m) exemption, which applies to any claim "[o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution …." Doc. #45 at 15; Miss. Code Ann. § 11-46-9(1)(m). Plaintiff argues that the exemption is inapplicable because "there is a factual dispute as to whether [Riggins]" was an inmate for purposes of the exemption. Doc. #45 at 15. Defendants do not address this argument in their reply brief. Doc. #48 at 8–9.

---

[15] "This Court will not grant such a skeletal motion." *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 535 n.7 (N.D. Miss. 2015) (citing *Cardenas v. Maslon*, __ F. Supp. 3d __, No. 3:14–CV–00036–DMB, 2015 WL 1291862, at *8 (N.D. Miss. Mar. 17, 2015)).

Due to Defendants' failure to properly brief the purportedly applicable exemptions and their failure to specifically address Plaintiff's response as to the applicability of § 11-46-9(1)(m), summary judgment based on the exemptions will be denied. *See Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, No. 10-1062-SAC, 2011 WL 2897334, at *13 n.1 (D. Kan. July 18, 2011) ("It is not the court's responsibility to identify the applicable legal doctrine, to cite the proper legal authorities, and to apply them to an issue.").

## V
### Conclusion

For the reasons above, Defendants' motion [36] for summary judgment is **DENIED.**

SO ORDERED, this 22nd day of September, 2015.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**